PER CURIAM.
By this interlocutory appeal, the State brings for review an order of the trial court which suppressed evidence contained in an address book belonging to the defendant. The trial judge has given us a full statement of the facts in her order. They are as follows:
“1. On September 3,1977, the Defendant was arrested for the crime of first degree murder.
“2. On November 23, 1977, the Defendant was incarcerated in the Dade County Jail.
“3. For approximately two weeks pri- or to November 23,1977, one Lloyd Plum-mer had been the Defendant’s roommate. Mr. Plummer appeared for deposition at the Metropolitan Justice Building pursuant to a subpoena issued by defense counsel.
“4. In order to verify his time for appearance, Mr. Plummer searched the dresser he had shared with the Defendant to find the subpoena. He came upon various personal belongings of the Defendant, among which was an address book.
“5. The Defendant did not give Mr. Plummer permission to read the contents of the address book.
“6. In seeking to deliver certain personal belongings, including the address book, to the Defendant, Mr. Plummer *43 voluntarily without any request from the Defendant brought them with him to the Metropolitan Justice Building on the date scheduled for his deposition to deliver them to the Defendant’s attorney.
“7. While en route to the office of defense counsel, Mr. Plummer met the prosecutor in the case, Assistant State Attorney Darby.
“8. Mr. Plummer informed the prosecutor that he possessed personal belongings of the Defendant and wished to deliver them to the appropriate person, whereupon the prosecutor obtained the address book with the consent of Mr. Plummer, leafed through the pages and came upon a statement written by the Defendant which incriminated him in this cause.
“9. Upon learning that the prosecutor sought to use said statement against the accused, defense counsel filed a motion seeking the suppression of the statement on the grounds that: [1] the search and seizure of the address book by the prosecutor was unreasonable and thereby in violation of the Fourth Amendment to the Constitution of the United States and Article 1, Section 12 of the Constitution of the State of Florida; [2] the introduction of the statement into evidence would be violative of the privilege against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States and Article 1, Section 16 of the Constitution of the State of Florida.”
The trial court, in an earnest effort to follow this court’s decision in State v. Kircheis, 269 So.2d 16 (Fla. 3d DCA 1970), held as follows:
“10. This Court finds State v. Kircheis, 269 So.2d 16 (Fla. 3d DCA 1970) to be dispositive of the Defendant’s self-incrimination claim. In Kircheis, the Defendant, while in jail, requested that his briefcase be brought to him. Prior to delivering the briefcase to the Defendant, a police officer searched the briefcase and found a written incriminatory statement of the Defendant, to wit: T killed Ivy Prather.’ (the victim of the alleged homicide.) In affirming the order suppressing the statement, the Third District Court of Appeal held:
‘ . . . evidence [lawfully] seized which is ‘testimonial’ or ‘communicative’ in nature, the introduction of which would amount to compelling the Defendant to become a witness against himself, is subject to be suppressed because in violation of the fifth amendment. This exception was pointed out by the Supreme Court of the United States in Maryland Penitentiary v. Hayden, [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782] supra, citing Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. For that reason . the order suppressing the ‘testimonial’ or ‘communicative’ statement found in the briefcase was not error.’ Id. at 17.
The same holding would control the case at bar, there having been no waiver by the Defendant of his privilege against self-incrimination.
“The Kircheis holding squarely comports with the principles espoused in Miranda v. Arizona, 384 U.S. 436, 460 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966) wherein the Court noted:
‘Thus we may view the historical development of the privilege as one which groped for the proper scope of governmental power over the citizen. As a ‘noble principle often transcends its origins,’ the privilege has come rightfully to be recognized in part as an individual’s substantive right, a ‘right to a private enclave where he may lead a private life. That right is the hallmark of our democracy.’ (Citation omitted)
“This Court finds that the Defendant possessed a reasonable expectation that the privacy of his writings in his address book would not be invaded. This brings the Court to the search and seizure question.
“11. The Court finds that the facts support the conclusion that the Defendant sought to preserve his writings as private; the Defendant did not consent to a search of his address book nor know *44 ingly expose it to the public. It cannot be disputed that the Defendant’s writings ■ in the address book were constitutionally protected under the search and seizure clauses of the state and federal constitutions.
“As such, an unreasonable search and seizure by a state officer was conducted when the prosecutor seized the address book and searched its contents with the knowledge that said book was a personal belonging of the Defendant, the custodian of which sought to deliver it to the Defendant’s attorney.
“The Fourth Amendment protects people and not simply places; a Defendant’s reasonable expectation of privacy must not be invaded by unreasonable state action. Katz v. United States, 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967). No viable justification is offered for the prosecutor’s obtaining and examining the Defendant’s address book. No probable cause existed to believe that the book contained evidence of a crime. Even if probable cause had existed, the search warrant requirement was not fulfilled. Cf. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476 [53 L.Ed.2d 538] (1977).”
As an additional ground upon which the motion to suppress was granted, the trial court found that the seizure of the address book constituted an unreasonable search and seizure by the prosecutor.
We hold that the trial court’s reliance upon our opinion in State v. Kircheis, 269 So.2d 16 (Fla. 3d DCA 1972), was misplaced and that the writing contained in the address book does not come under the holding of that case. In addition, we hold that the delivery of the address book to the prosecuting attorney did not constitute an unreasonable search and seizure.
In State v. Kircheis, supra, this court held that a handwritten statement which stated that the defendant had killed the victim of the alleged homicide and which was lawfully seized from defendant’s briefcase was not admissible in a manslaughter prosecution because the admission of the statement would amount to compelling the defendant to become a witness against himself. A decision of this court rendered subsequent to Kircheis, i. e., the case of Hampton v. State, 308 So.2d 560 (Fla. 3d DCA 1975), limited the holding of Kircheis to situations involving the admission of handwritten confessions, as contrasted to the introduction into evidence of an admission against interest. In Hampton, a letter written by a defendant in jail to another inmate, asking him to say nothing about what the defendant had told him concerning a rape, was held admissible, the court specifically noting that State v. Kircheis, supra, was distinguishable on the facts.
In addition, we think that the holding in Hampton v. State, supra, is in accord with the holdings of the Supreme Court of the United States in Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), and Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).
The statement in the address book having been voluntarily committed to writing by the defendant prior to the alleged crime for which he will now be tried does not constitute a confession barred by the privilege that a defendant may not be required to testify against himself.
Turning to the court’s finding that the circumstances under which the State came into possession of the address book constituted an illegal search and seizure, we hold that the facts of this case do not support that holding. Defendant’s roommate, Mr. Plummer, had lawful possession of the address book and while it was in his custody, he voluntarily allowed the prosecuting attorney to examine the book. Evidence discovered in a private search is not subject to exclusion for failure to obtain a search warrant or otherwise comply with the requirements of the Fourth Amendment unless the private party, in the light of all the circumstances of the case, must be regarded as having acted as an instrument or agent of the State. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As Mr. Plummer was not requested by the State to make a search and made the search voluntarily on his own *45 account, he cannot be held to have been an agent of the State. The trial judge specifically found that the prosecutor had obtained the address book with the consent of Mr. Plummer. Therefore, no seizure under the Fourth Amendment can be found from that circumstance. In addition, we find nothing in this record to substantiate the trial judge’s holding that the defendant had a justifiable expectation of privacy in the notations placed in the address book when he left the book in a dresser which he shared with his roommate, Plummer. See Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). We, therefore, hold that the trial court erred in holding that the examination of the address book by the State constituted an unreasonable search and seizure.
The order suppressing the evidence is reversed and the cause is remanded.